# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv476

| | |
|---|---|
| **JOYCE E. PATTERSON, as Administratrix of the Estate of Yolanda Evett Patterson Hemphill,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF DECISION** |
| **vs.** ) | **AND ORDER** |
| ) | |
| **STEVEN BROWN, *et al.*,** )<br>) | |
| **Defendants.** )<br>) | |

**THIS MATTER** came before the Court on November 20, 2007 for a

status conference and motion hearing on several pretrial motions.

## I. Procedural History

This civil action was originally filed in the General Court of Justice,

Superior Court Division, for Gaston County, North Carolina on August 21,

2006 and was removed to this Court on November 17, 2006.[1]  The Plaintiff

Joyce E. Patterson, as Administratrix of the Estate of Yolanda Evett

Patterson Hemphill ("decedent"), brings suit against the following

---

[1]A second notice of removal was filed on November 22, 2006, resulting in a separate civil action, No. 3:06cv479.  On January 24, 2007, Judge Mullen ordered that the cases be consolidated and that the second removal action be closed.

Defendants: (1) Steven Brown, Frankie Bell, and Sears Roebuck & Company (collectively the "Sears Defendants"); (2) D. Whitlock, individually and in his official capacity as a City of Gastonia Police Officer, Terry Sult, individually and in his official capacity as the Chief of Police for the City of Gastonia, Jennifer Stultz, individually and in her official capacity as Mayor for the City of Gastonia, and the City of Gastonia (collectively "City of Gastonia Defendants"); (3) Gaston County, Alan Cloninger, individually and in his official capacity as the Sheriff of Gaston County, "Gaston County Emergency System [sic]," Jan Winters, individually and in his official capacity as the County Manager for Gaston County, John Doe 1, individually and in his official capacity as an employee of the Gaston County Emergency Management Services, John Doe 2, individually and in his official capacity as an employee of the Gaston County Emergency Management Services, John Doe 3, individually and in his official capacity as a Deputy Sheriff of the Gaston County Sheriff Department, and John Doe 4, individually and in his official capacity as a Deputy Sheriff for the Gaston County Sheriff Department (collectively "Gaston County Defendants"); (4) American Service Group d/b/a Prison Health Services

("American Service Group"); (5) Westfield/Eastridge Mall; (6) Watson Insurance Agency; and (7) IPC International ("IPC").

Plaintiff alleges that on August 20, 2004, the decedent was unlawfully arrested by security officers at the Sears store in the Westfield/Eastridge Mall and that excessive force was used in effectuating the decedent's arrest. Plaintiff further alleges that when the decedent was taken to jail, her requests for medical assistance were repeatedly denied, resulting in her death later that day. The Complaint alleges a total of 38 causes of action, including claims under 42 U.S.C. § 1983 against the City of Gastonia Defendants and the Gaston County Defendants. The Complaint also alleges numerous state law claims for assault, negligence, intentional infliction of emotional distress, wrongful death, negligent training, and negligent retention and supervision.

A Stipulation of Dismissal was entered with respect to the Defendant Westfield/Eastridge Mall on November 14, 2007. With respect to the Defendant Watson Insurance Agency, the Plaintiff advised the Court at the November 20, 2007 hearing that she intends to abandon her claim against this Defendant. The record shows that the Plaintiff has never attempted service or even obtained a summons for this Defendant. Accordingly,

Watson Insurance Agency's Motion to Dismiss [Doc. 16] is granted, and this Defendant is hereby dismissed from this action for failure to prosecute. Any remaining motions filed by these Defendants shall be denied as moot.

## II.     Service of Process Prior to Removal

In December, 2006, shortly after the removal of this action, motions to dismiss were filed by the Gaston County Defendants, the Sears Defendants, American Service Group, and IPC.  These Defendants argue that dismissal of this action is warranted because there was insufficient process and insufficient service of process under North Carolina law prior to removal.  [Docs. 14, 21, 46, 83].  Specifically, the Defendants argue that jurisdiction was never conferred on them because the Plaintiff failed to obtain valid summonses within five days of the filing of the Complaint in state court.  The Defendants further argue that the Plaintiff failed to keep the summonses "alive" in state court, so that the statute of limitations had expired by the time of removal.  Additionally, the Gaston County Defendants and American Service Group challenge the manner in which the Plaintiff attempted to perfect service of process on them prior to removal.

In a response filed on February 8, 2007, the Plaintiff argues that she did obtain summonses within five days of initiating this action. She further argues that the Defendants' motions to dismiss should be denied because the Plaintiff was afforded an additional 120 days to perfect and/or correct service of process upon removal of this action.

Although Plaintiff argues in her response that original summonses had been timely obtained, Plaintiff did not offer any proof in support of this argument. Subsequently, Plaintiff moved to amend her response to submit copies of the original Summonses that she obtained on August 21, 2006, the date on which the state court Complaint was filed. [Doc. 40]. For cause shown, the Court will allow Plaintiff to amend her response to include as exhibits the original state Summonses obtained on August 21, 2006.

### A.    Failure to Obtain Original Summonses

The Defendants first argue that jurisdiction was never conferred on them because the Plaintiff failed to obtain valid summonses within five days of the filing of the complaint. North Carolina law requires the issuance of summons within five days of filing a civil action. N.C. Gen. Stat. § 1A-1, Rule 4(a). If summons is not issued within five days, "the

action abates and is deemed never to have commenced . . . ." Conner

Bros. Mach. Co. v. Rogers, 177 N.C. App. 560, 561, 629 S.E.2d 344, 345

(2006).  Absent issuance of a summons, the Court cannot acquire

jurisdiction over the person or the subject matter of the action.  Conner

Bros., 177 N.C. App. at  561-62, 629 S.E.2d at 345.

The Plaintiff has submitted copies of the original Summonses

obtained in the state court action.  See Docs. 48, 57.  These original

summonses were issued on the day that the Complaint was originally filed,

August 21, 2006, and include Summonses for the Gaston County

Defendants, the Sears Defendants, American Service Group, and IPC

International.   Thus, these Defendants' argument that jurisdiction was

never conferred on them as a result of no summonses having been issued

is without merit.

### B.    Attempts at Service of Process Under State Law

The Gaston County Defendants and American Service Group

challenge the manner in which the Plaintiff attempted to perfect service of

process on them on October 23, 2006.  On that day, the Plaintiff had an

unidentified person leave copies of the Complaint and Summonses for

these Defendants on the desk of Shirley Hengel, an administrative

assistant in the Gaston County Manager's Office. The Plaintiff also had an unidentified individual leave a copy of the Complaint and a Summons for Gaston County Emergency Management System on the desk of Patsy Haney, an administrative assistant with Gaston County Emergency Management.

The Plaintiff's methods of service for these Defendants do not appear to comply with the state procedures for service of process. There is no evidence that either Hengel or Haney is "an agent authorized by appointment or by law to be served or to accept service of process" on behalf of any of the individual Defendants. <u>See</u> N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(b). To the contrary, the affidavits submitted by the Defendants establish that none of the individual Defendants had authorized Hengel or Haney to accept process on their behalf. Further, as administrative assistants, neither Hengel nor Haney qualifies as any of the individuals delineated in Rule 4(j)(5) who may accept service of process on behalf of a county or county governmental body. <u>See</u> N.C. Gen. Stat. § 1A-1, Rule 4(j)(5)(b) (permitting service upon county by personal delivery to the "county manager or to the chairman, clerk or any member of the board of commissioners for such county"); Rule 4(j)(5)(c) (permitting service upon

county unit or body by personal delivery "to an officer or director thereof" or to "an agent or attorney-in-fact authorized by appointment or by statute to be served or to accept service in its behalf").  Finally, because it is undisputed on the record that both Hengel and Haney were employed by governmental entities and not by American Service Group, neither qualifies as an individual who may accept service of process on behalf of that corporation.  See N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(a) (permitting service on a corporation by delivery to "an officer, director, or managing agent" or by leaving copies in office of an officer, director, or managing agent with person in charge of the office); Rule 4(j)(6)(b) (permitting service by delivery to "an agent authorized by appointment or by law" to accept service of process).

Determining that the service of process was insufficient at the state court level does not end the inquiry, however, because 28 U.S.C. § 1448 provides, in pertinent part, as follows:

> In all cases removed from any State court to any
> district court of the United States in which any one
> or more of the defendants has not been served with
> process or in which the service has not been
> perfected prior to removal, or in which process
> served proves to be defective, such process of
> service may be completed or new process issued in

> the same manner as in cases originally filed in such
> district court.

28 U.S.C. § 1448.  Thus, even if service of process was defective in the

state court proceeding or was never even attempted at all, 28 U.S.C. §

1448 affords the Plaintiff an opportunity upon removal (1) to serve any

Defendants not served in the state court proceeding and (2) to re-serve

any Defendants who were improperly served while the matter was pending

in state court.  See Tadco Constr. Corp. v. Peri Framework Systems, Inc.,

460 F. Supp. 2d 408, 412 (E.D.N.Y. 2006); Cowen v. Am. Med. Sys, Inc.,

411 F. Supp. 2d 717, 720 (E.D. Mich. 2006) ("after an action is removed,

federal law governs, and defects in service can be cured in accordance

with federal rules of procedure").  "Section 1448 indicates a philosophy that

removed cases are to be handled substantially as though they had never

been in a state court.  Thus, when one of several defendants was not

served prior to removal it has been held that there is no process to

'complete' and new process must be issued pursuant to Rule 4."  4A

Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure

§ 1082 (3d ed. 2002) (internal quotation marks omitted).

The Defendants argue that state jurisdictional standards apply in

removal actions, and that section 1448 should not operate as a tolling

statute allowing the Plaintiff to continue to assert claims after having failed to perfect service within the applicable statute of limitations prior to removal.  In support of this argument, the Defendants cite <u>Witherow v. Firestone Tire & Rubber Co.</u>, 530 F.2d 160 (3d Cir. 1976); <u>Wolfe Cycle Sports, Inc. v. Yamaha Motor Corp.</u>, 366 F. Supp. 2d 885 (D. Neb. 2005); and <u>Morton v. Meagher</u>, 171 F. Supp. 2d 611 (E.D. Va. 2001).

The cases cited by the Defendants are distinguishable from the present case, however.  In each of those cases, the court determined that because service was not effected within the time frame prescribed by state statute prior to removal, the action would have been subject to dismissal had it remained in the state court.  As such, the case was already jurisprudentially "dead" by the time it was removed to federal court, and section 1448 could not be used to revive the action.  In the present case, however, Plaintiff's action was not subject to dismissal in the state court at the time of removal.  Under North Carolina law, a summons must be served within 60 days of issuance.  N.C. Gen. Stat. § 1A-1, Rule 4(c).  "A summons not served within 30 [now 60] days loses its vitality and becomes *functus officio* . . . ."  <u>Dozier v. Crandall</u>, 105 N.C. App. 74, 75, 411 S.E.2d 635, 636 (1992).  If a summons is not served within 60 days, a plaintiff may

remedy the failed summonses either by endorsement of the original summons or by application for alias and pluries summons within 90 days of the original issue or the last endorsement. N.C. Gen. Stat. § 1A-1, Rule 4(d). Thus, while "a summons not served within 30 [now 60] days becomes dormant and unserveable, under Rule 4(c) it is not invalidated *nor is the action discontinued*." Dozier, 105 N.C. App. at 76, 411 S.E.2d at 636 (emphasis added). It is only when "a party fails to use either method to extend time for service [that] the suit is discontinued, and treated as if it had never been filed." Johnson v. City of Raleigh, 98 N.C. App. 147, 148-49, 389 S.E.2d 849, 851, review denied, 327 N.C. 140, 394 S.E.2d 176 (1990).

In the present case, the Plaintiff obtained original Summonses on August 21, 2006. There is nothing in the record to indicate that any of these Summonses were served on the Defendants. Although these Summonses were not served within 60 days, the Summonses were not invalidated, nor was the Plaintiff's action discontinued, as the Plaintiff had ninety days from the date of this original issue, or approximately November 19, 2006, to procure alias and pluries summonses for the Defendants.[2]

---

[2]The Plaintiff did in fact obtain some alias and pluries Summonses on October 13, 2006, but it does not appear that she did so for all of the Defendants named in the

Two days before this 90 day-period had expired, however, the action was removed to this Court. Because the Plaintiff still had the opportunity to revive the Summonses by seeking a reissuance prior to the expiration of the 90-day period, Plaintiff's action would not have been subject to dismissal in the state court and thus was not "dead" upon removal, as argued by the Defendants.

Another case cited by the Defendants at oral argument, Hyman v. City of Gastonia, No. 3:04cv025 (W.D.N.C. June 30, 2004), aff'd, 137 Fed. Appx. 536 (4th Cir. 2005), is also distinguishable from the present case. In Hyman, this Court dismissed an action after removal for the plaintiff's failure to comply with North Carolina's rules for service of process. In so doing, the Court noted that the plaintiff "never made an attempt to correct the deficient service of process" once the case was removed, and thus, the Court dismissed the action. Hyman, No. 3:04cv025 (Order entered July 1, 2004). Unlike the plaintiff in Hyman, the Plaintiff in the present case *has* made an attempt since removal to correct the deficient service of process attempted at the state level.

---

action. The record only contains alias and pluries summons for John Doe 1, John Doe 2, Gaston County, City of Gastonia, Gaston County Emergency Management System, American Service Group, and Jan Winters. [Doc. 1-3].

Because federal law provides the Plaintiff the opportunity upon removal to correct any deficiencies in the state service, and the Plaintiff has taken steps to correct such deficiencies and has attempted to serve all of the Defendants in this action pursuant to the Federal Rules, the Defendants' challenges to the Plaintiff's attempts to effect service of process under state law prior to the removal of this action are rendered moot. The Plaintiff has been afforded a "second bite of the apple," so to speak, by operation of section 1448. Accordingly, to the extent that the Defendants' motions challenge the sufficiency of service of process *prior* to removal of this action, these motions are denied.

## III.    Service of Process After Removal

### A.    Applicability of Rule 4(m)

Having determined that the Plaintiff was entitled upon removal to attempt to correct the deficient service of process on the Gaston County Defendants and American Service Group and to perfect service of process on the other Defendants in this action, the next issue the Court must determine is the length of time the Plaintiff had to do so. The Federal Rules of Civil Procedure require that a defendant be served "within 120 days after the complaint is filed." <u>See</u> Fed. R. Civ. P. 4(m). The

Defendants argue that this provision means that the Plaintiff was required to serve them with process within 120 days of the filing of the state court complaint, and therefore, the Plaintiff's attempts at service under federal law were not timely. The Plaintiff argues, on the other hand, that the time limit for service under Rule 4(m) should run instead from the date of removal.

The Middle District of North Carolina addressed this very issue in Motsinger v. Flynt, 119 F.R.D. 373 (M.D.N.C. 1988). In that case, the defendant argued that the plaintiff's attempts to serve him after removal were untimely because Rule 4(m) required the plaintiff to serve him within 120 days after the complaint was filed in state court. The Court rejected the defendant's argument, holding that the Federal Rules of Civil Procedure applied to cases only after removal. Id. at 376-77 (citing Fed. R. Civ. P. 81(c)). The Court further noted that to apply the federal rules retroactively to state court pleadings that were otherwise properly filed under state law "may create real unfairness." Id. at 377. As the Court explained:

> [I]t is possible that 120 days from filing of the complaint could pass without a defendant being served. Then, having notice of the action, a defendant could remove it to federal court and

> immediately move for dismissal pursuant to Rule
> 4(j) [now Rule 4(m)], Fed. R. Civ. P.  The plaintiff
> would immediately be in a predicament since 120
> days would have passed since the filing of the
> original complaint and he would not have made a
> motion for an extension of time to serve process.

Id. at 377 n.5.  The Court concluded that allowing a plaintiff 120 days from

the date of removal to serve process "provides an appropriate balance

which accommodates the federal interest in insuring that process will be

timely served yet does not penalize the plaintiff or give undue advantage to

the defendant . . . ."  Id. at 377.

Other courts that have addressed this issue have also held that the

120-day time period for service of process in a removal action runs from

the date of the removal, not the date that the state court complaint was

originally filed.  See Cowen, 411 F. Supp. 2d at 721; G.G.G. Pizza, Inc. v.

Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999); Eccles v.

National Semiconductor Corp., 10 F. Supp. 2d 514, 519 (D. Md. 1998); see

also Russo v. Prudential Ins. Co., 116 F.R.D. 10, 12 (E.D. Pa. 1986)

(rejecting retroactive application of Rule 4's 120-day period to service

effected prior to removal).

The Court finds the reasoning of Motsinger and the other above-cited

decisions to be persuasive.  In the present case, the action was removed

on November 17, 2006.  Therefore, the Plaintiff had until March 19, 2007 to serve process on the Defendants pursuant to the Federal Rules of Civil Procedure.

## B.    Discovery Regarding Service of Process

Before addressing the sufficiency of the service of process attempted on the Defendants in this case, the Court will first consider whether the Plaintiff is entitled to some preliminary discovery on the service issue prior to a ruling on the pending motions to dismiss.  On May 14, 2007, after the 120-day for service had expired and while the present Motions to Dismiss were pending, the Plaintiff served the Defendants with a set of six interrogatories, seeking the following information:

1.    Please state how you first became aware of the existence of this lawsuit.

2.    Please state the date upon which you first became aware of the existence of this lawsuit[.]

3.    Please state the date [upon] which you first received a copy of the Summons and/or Complaint regarding this lawsuit[.]

4.    Please state any additional dates [upon] which you have received copies of the Summons and Complaint of this lawsuit.

5.    For each additional date [upon] which you have received a copy of the Summons and

Complaint, please state the manner in which you received the copy of the Summons and Complaint.

6.    For each copy of the Summons and Complaint which you have received, please state the procedure you followed prior to responding to the Summons and Complaint.

On June 1 and 12, 2007, respectively, the Gaston County Defendants and American Service Group filed motions seeking a protective order prohibiting the Plaintiff from seeking such discovery. [Docs. 98, 100, 104].[3] For grounds, the Defendants argue that these discovery requests are premature, as they were submitted while the Motions to Dismiss were pending and prior to the parties' Rule 26(f) conference.

The Sears Defendants and IPC move to adopt and join in these motions for protective order.[4] For cause shown, the motions to adopt filed by the Sears Defendants and IPC [Docs. 106, 107] are granted, and these Defendants shall be deemed to have joined in the motions for protective order.

_____

[3]Defendant Watson Insurance Agency filed a similar motion for a protective order [Doc. 102]. However, as this Defendant has already been dismissed from this action, this motion is moot.

[4]Defendant Westfield/Eastridge Mall also filed a motion to adopt and join in these motions [Doc. 112]. As this Defendant has already been dismissed from this action, this motion is also moot.

Shortly after the Defendants filed their motions for a protective order, on June 14, 2007, the Plaintiff filed a motion [Doc. 109] seeking an extension of twenty days to respond. No ruling was immediately forthcoming from the Court. Rather than file her response within the time frame requested, the Plaintiff inexplicably waited until August 3, 2007, far beyond the time requested in her motion, to file a response. As such, the Plaintiff's response was untimely and rightly should not be considered now by the Court. This case is rife, however, with untimely filings from both sides, a practice which has contributed in large part to the procedural morass in which this case now finds itself. Mindful that this case needs to move forward, and in the interest of fairness, the Court will consider *all* of the parties' filings to date, regardless of how untimely they are in retrospect. The Court therefore will reluctantly accept the Plaintiff's response, despite its obvious untimeliness.[5]

In her response, the Plaintiff argues that she is entitled to seek discovery related to service of process because the Defendants have challenged the manner and means by which they were allegedly served.

---

[5]Because Plaintiff has already filed her response, and it has now been accepted by the Court, the Plaintiff's request for an extension of time [Doc. 109] will be denied as moot.

As such, Plaintiff argues that she "is left with no other recourse than to establish proper service through discovery methods."

The Court concludes that the Plaintiff's discovery requests are improper. Rule 26(d) of the Federal Rules of Civil Procedure provides that unless otherwise authorized by the Rules, an Order of the Court, or the agreement of the parties, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). No Rule 26(f) conference has yet taken place in this action, and the Plaintiff neither sought leave from the Court or the agreement of the Defendants to propound this discovery.

Even if such leave had been sought, Plaintiff's discovery is largely irrelevant to the issue of service of process pending before the Court. The only possibly relevant fact that could be gleaned from this discovery is the date that each of the Defendants received a copy of the Summons and the Complaint. Such information could have just as easily been established by an affidavit of Plaintiff's process server. Accordingly, Plaintiff's discovery is unnecessary on this issue. The other information sought by this discovery is simply not material to the issue that is presently before the Court, that is, whether Plaintiff has complied with Rule 4 of the Federal Rules of Civil

Procedure. See ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 716 n.3 (4th Cir. 2002) (finding district court did not abuse discretion in refusing to allow plaintiff to engage in discovery where information sought was not material to the issue of personal jurisdiction), cert. denied, 537 U.S. 1105 (2003). For these reasons, the Defendants' Motions for Protective Order [Docs. 98, 100, 104] are granted, and the Court will proceed to rule on the pending motions to dismiss without allowing the Plaintiff to engage in preliminary discovery.

### C. Service on the Defendants

Having determined that the Plaintiff had 120 days from the date of removal to effect service of process on the Defendants under the Federal Rules of Civil Procedure, the issue now becomes whether the Plaintiff was successful in doing so.

The Plaintiff bears the burden of proving that service of process was valid as to each Defendant. See Homer v. Jones-Bey, 415 F.3d 748, 754 (7th Cir. 2005) ("it is the plaintiff who ordinarily bears the burden of demonstrating that the district court had personal jurisdiction over the parties, including valid service of process"); Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993) ("the party

asserting the validity of service bears the burden of proof on that issue").

To satisfy this burden, a plaintiff must submit proof that service was properly effected.  A signed return of service from a private process server is "strong evidence of valid service."  Greater St. Louis Constr. Laborers Welfare Fund v. Little, 182 F.R.D. 592, 595 (E.D. Mo. 1998); see also Mobern Electric Corp. v. Walsh, 197 F.R.D. 196, 198 (D.D.C. 2000) (finding process server's affidavit created rebuttable presumption that service was valid); Kost v. United Parcel Serv., 926 F. Supp. 1022, 1024 (D. Kan. 1996) (finding return of service combined with accompanying affidavit of counsel established a prima facie case of valid service).  In order to rebut this presumption, a defendant bears a heavy burden.  A presumption of valid service "can be overcome only by strong and convincing evidence."  Greater St. Louis Constr. Laborers Welfare Fund, 182 F.R.D. at 595.  Thus, a defendant must do more than just merely allege that service was defective.  See FROF, Inc. v. Harris, 695 F. Supp. 827, 829 (E.D. Pa. 1988) ("a bare allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's

return").[6]  With these principles in mind, the Court will address the propriety of the service upon the Defendants.

### 1.    Service of Partial Complaint

Defendant IPC, the Sears Defendants, and the Gaston County Defendants all claim to have been served with only partial copies of the Complaint.  [Docs. 78, 88, 118].  Rule 4(c) of the Federal Rules of Civil Procedure requires that a copy of the "summons must be served with a copy of the complaint."  This provision has been interpreted to require the service of a copy of the complaint *as filed*; thus, the service of a partial copy of the complaint does not satisfy constitute valid service under Rule 4.  See West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1529 (9th Cir. 1990) (finding plaintiff's service of an incomplete draft complaint which was seven pages shorter than complaint failed to comply with Rule 4 "because that Rule requires service of the filed complaint."); Ferdinandsen v. State, No. C2-01-630, 2002 WL 31998964, at *2 (S.D. Ohio July 26,

---

[6]Similarly, under North Carolina law, the filing of an affidavit consistent with N.C. Gen. Stat. § 1-75.10(4) "raises a rebuttable presumption of valid service consistent with North Carolina Rule of Civil Procedure 4(j)(1)(c)."  Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004).  In order to overcome this presumption, "a defendant must provide 'affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant."  Id. (quoting Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996).

2002) (finding plaintiff did not comply with Rule 4 where copy of complaint served varied from the version of the complaint filed).

Defendant IPC first raised this issue in its motion to dismiss filed on April 10, 2007. The Sears Defendants first asserted this argument in a motion to dismiss filed on May 1, 2007. Both IPC and the Sears Defendants supported their arguments with affidavits from the persons who received service on behalf of these Defendants, as well as the copies of the Complaint received from the process server. All of the copies submitted are missing pages 11 through 26 of the 39-page Complaint.

The Plaintiff responded to these motions on May 14, 2007, arguing that the Defendants were served with all of the pages of the Complaint. This argument, however, was an unsworn assertion in the Plaintiff's response brief and was not supported by any affidavits or other competent evidence.

At the motion hearing on November 20, 2007, the Gaston County Defendants argued for the first time that they too were served with only partial copies of the Complaint. Subsequent to the hearing, the Gaston County Defendants filed an "alternative" motion to dismiss [Doc. 118], asserting this argument as an additional ground for dismissal for

insufficient service of process.  This "alternative" motion is supported by the affidavits of Sheriff Cloninger and Phil Ponder, Assistant County Manager, who received service on behalf of the Gaston County Defendants, as well as the affidavit of Charles Moore, the County Attorney, who examined the summonses and copies of the Complaint served upon these Defendants.  These affiants state that the copies of the Complaint served upon the Gaston County Defendants were not complete, as each copy was missing pages 11 through 26.  Attached to these affidavits are the partial copies of the Complaint which were received at the time of service.

Without citing to any Rule of Civil Procedure or any other authority in support, Plaintiff argues that the Gaston County Defendants' motion should be denied because these Defendants never alleged that they received only partial copies of the Complaint prior to the November 20, 2007 hearing. While the Court agrees that the Defendants could have, and indeed should have, raised this issue much earlier in the proceedings, the Court will not dismiss the Defendants' motion solely on this basis.  The Court cannot say that the Plaintiff is prejudiced in any way by the Defendants raising this alternative ground for dismissal at this late date.  In fact, the contrary would

appear to be the case; until the Gaston County Defendants raised this issue, the Plaintiff never submitted any evidence to rebut the claim made by the other Defendants that they had received partial copies of the Complaint.  Prior to the filing of the Gaston county Defendants' motion, the Plaintiff had been on notice for months that several of the other Defendants claimed to have received incomplete copies of the Complaint and that these Defendants had asserted this as a basis for dismissal.  Despite these motions pending for months, Plaintiff made no effort to submit any evidence to rebut these Defendants' claims.  Only after the Gaston County Defendants raised the issue at the November, 2007 hearing did the Plaintiff submit evidence in support of her assertion that service of the entire Complaint was made on *all* the Defendants.  Thus, while the Gaston County Defendants may have been dilatory in joining the other Defendants in raising the issue, the Plaintiff has been equally dilatory in responding to this issue at all.  In the interest of fairness and judicial economy, the Court will consider both the Gaston County Defendants' untimely raised alternative argument and Plaintiff's untimely evidence in opposition.

Plaintiff attempts to rebut the Defendants' allegations by submitting the affidavits of Anna Mahmood and process server James DeWitt.  In her

affidavit, dated December 7, 2007, Ms. Mahmood states that Plaintiff's counsel asked her to make copies of the Complaint and Summons and to address the envelopes for service. Ms. Mahmood states that she "personally hand-copied all pages of the Complaint and Summons"; that she placed the completed copies into the envelopes; and that she then sealed the envelopes. Ms. Mahmood states that she did not fail to copy any pages of the Complaint and Summons during this process. [Doc. 126-3]. In an affidavit dated December 6, 2007, Mr. DeWitt states that he received sealed envelopes from counsel's office and that he delivered these envelopes without tampering or removing any pages from them. [Doc. 126-2].

These affidavits are of questionable value. First, neither of the affidavits recites that the affiant is over the age of 18 and competent to testify to the matters contained therein. Such requirements are not merely *pro forma*; they are mandatory requirements. <u>See, e.g.</u>, Fed. R. Civ. P. 56(e) (requiring affidavits used to support or oppose motion for summary judgment to be made on personal knowledge and affirmatively show that "affiant is competent to testify to the matters stated" therein); <u>In re French</u>, 499 F.3d 345, 358 (4th Cir. 2007); 10B Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, <u>Federal Practice & Procedure</u> § 2738 (3d ed. 2007). Without these basic predicate facts, the competency of these affiants to testify to these matters is called into question.

While the affidavit of a private process server may, under some circumstances, be "strong evidence of valid service," <u>see</u> <u>Greater St. Louis Constr. Laborers Welfare Fund</u>, 182 F.R.D. at 595, DeWitt's affidavit offers no substantive evidence on the issue at hand. DeWitt states that he was provided sealed envelopes and that he did not open or otherwise tamper with these envelopes before serving them on the Defendants. Thus, DeWitt is not in a position to testify whether the copies of the Complaint contained therein were in fact complete.

While Ms. Mahmood states in her affidavit that she copied "all pages of the Complaint and Summons," she does not state *when* she made these copies. As such, the Court cannot determine which copies she is referring to; Ms. Mahmood could be referring to the copies made when the Plaintiff first filed her Complaint in state court on August 21, 2006, or when the alias Summonses issued in October, 2006, or even when the federal Summonses issued in March, 2007.

Ms. Mahmood's statement is further called into doubt by the multiple affidavits submitted by the Defendants which establishes that every copy of the Complaint that was served on these Defendants was missing the same number of pages. At best, Ms. Mahomood's affidavit establishes that she copied all of the pages of the Complaint that were *provided* to her, but does not foreclose the very real possibility that she was given an incomplete copy of the Complaint to copy.

Moreover, the Court finds the timing of these affidavits to be significant. Plaintiff initially failed to present *any* evidence in response to the claims of the IPC and the Sears Defendants that they received only partial copies of the Complaint. Only several months later – after the Gaston County Defendants also raised the issue and the Court questioned the Plaintiff about the copies at the November, 2007 hearing – did the Plaintiff procure the affidavits of DeWitt and Mahmood. The timing of these affidavits is therefore highly questionable under the circumstances.

The Defendants have presented numerous affidavits from those who received service on the Defendants' behalf, as well as other witnesses who saw the copies of the Summonses and Complaint, and each affiant consistently testifies that only partial copies of the Complaint were served.

In addition, these affiants have provided the copies of the Summons and Complaint that they received.  In every single case, the same pages of the Complaint (11-26) are missing.  The volume as well as the consistency of this evidence is convincing to the Court.

In light of the weak evidence presented by the Plaintiff of valid service, the questionable timing of her supporting affidavits, and the overwhelming, consistent evidence presented by the Defendants, the Court finds as fact that these Defendants were not served with a copy of the Complaint that included pages 11 through 26 thereof, and that based thereon, the Court concludes that the Plaintiff has failed to carry her burden of showing that full and complete copies of the Complaint were served upon these Defendants.  As such, the Court determines as a matter of law that these Defendants were not properly served within 120 days of the removal of this action.

## 2.    Improper Summons

The Court next turns to Plaintiff's attempted service of Defendant American Service Group d/b/a Prison Health Services.

On March 9, 2007, the Plaintiff obtained a summons from this Court for "American Service Group, d/b/a Prison Health Services c/o Jan Withers

[sic], County Manager for Gaston County, North Carolina." The summons is dated March 9, 2007, is signed by the Clerk of the Court, and contains the Court's seal.

According to the Affidavit of Kimberly Jay [Doc. 91-2], Litigation Manager for Prison Health Services, Inc., on March 19, 2007, a copy of the Complaint, along with two summonses, were received at the corporate headquarters for Prison Health Services, Inc. The summonses received were undated, did not bear the seal of the Court, and were not signed by the Clerk of the Court. The two summonses were directed to "Mr. Michael Catalano; President Legal Department American Service Group and Prison Health Services" and to "American Service Group and Prison Health Services," respectively. Copies of these summonses are attached as exhibits to Ms. Jay's affidavit.

Rule 4 requires that a summons "be directed to the defendant." Fed. R. Civ. P. 4(a)(1)(B). In the present case, neither of the summonses were directed to the Defendant "American Service Group d/b/a Prison Health Services"; rather, they were directed to "Mr. Michael Catalano; President Legal Department American Service Group and Prison Health Services" and to "American Service Group and Prison Health Services." Rule 4

further requires that a summons be signed by the clerk and that it bear the Court's seal. Fed. R. Civ. P. 4(a)(1)(F), (G). Neither requirement was met in this case, as the Defendant was served with blank, unsigned Summonses that did not contain the seal of the Court. Accordingly, the Court concludes that the Summonses that the Plaintiff attempted to deliver to this Defendant were defective.

The Plaintiff argues that this Defendant was properly served with a Summons and Complaint on March 19, 2007, and submits an "Affidavit of Service" in support of her response. This "Affidavit of Service" [Doc. 56] is signed by attorney Pamela Hunter but is not notarized or otherwise sworn to. Ms. Hunter's unsworn "Affidavit" is not competent proof of service. Proof of service must be made by affidavit. See Fed. R. Civ. P. 4(l)(1). An attorney's unsworn assertions regarding service of process are not sufficient and will not be considered by the Court. Even if the Court were to consider Ms. Hunter's unsworn statements, however, Ms. Hunter concedes in her "Affidavit" that the summonses were not properly endorsed. Ms. Hunter attempts to lay blame upon the Clerk, asserting that the "Clerk of the United States District Court failed to endorse the Summons . . . ." Plaintiff has offered no evidence, however, that the Clerk

was in any way negligent in issuing this Summons. Even if some negligence could be shown, it is ultimately the duty of counsel to ensure that a summons is properly issued, and an attorney's failure in this regard cannot be imputed to the Clerk as negligence. See In re Hall, 222 B.R. 275, 277 n.2 (E.D. Va. 1998) (dismissing action when summons served lacked clerk's signature, the court's seal, and date on which defendant had to respond). Moreover, such attempts at laying blame are particularly inappropriate where there is undisputed evidence in the record that the Clerk *did* in fact endorse a summons, directed to the Defendant American Service Group d/b/a Prison Health Services, on March 9, 2007. Based on this evidence, the Court finds as fact that the Plaintiff did not attempt to serve American Service Group with this properly executed summons, but rather, the Plaintiff attempted to serve summonses that were not signed, not dated, did not bear the Court's seal, and were not even directed to this particular corporate Defendant.

For the foregoing reasons, the Court concludes Plaintiff failed to properly effect service on the Defendant American Service Group d/b/a Prison Health Services within 120 days of removal of this action.

### D.    Motion for Extension of Time for Service

On March 15, 2007, with four days remaining for service, the Plaintiff filed a Motion to Extend Time to Serve Summons [Doc. 50].  In this motion, the Plaintiff states that "[a]lthough Plaintiff believes that all Defendants have again been properly served pursuant to Rule 4 of the Federal Rules of Civil Procedure, out of an abundance of caution, the Plaintiff requests an extension of time to insure that all Defendants are properly served." Plaintiff states that an extension of time is warranted as she "needs to insure that Plaintiff will have the opportunity to cure any unforeseen or potential defects in service of process."  Plaintiff further states that she has "diligently engaged in service of process upon Defendants" and that the motion for extension of time is made in good faith and not for the purpose of delay.

The Gaston County Defendants, American Service Group, IPC, and the Sears Defendants oppose the Plaintiff's motion, arguing that the Plaintiff has not been diligent in attempting to serve the Defendants; that there has been no showing of good cause for extending the time for service; and that the lack of proper service has delayed the progress of this case for several months.

Prior to 1993, Rule 4(j) required courts to dismiss a plaintiff's complaint if service was not made within 120 days after the filing of the complaint, absent a showing of good cause.  See <u>Hammad v. Tate Access Floors, Inc.</u>, 31 F. Supp. 2d 524, 526-27 (D. Md. 1999).  As part of the 1993 amendments to the Federal Rules, Rule 4(j) was renumbered as Rule 4(m) and restated as follows:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specific time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  In 1995, the Fourth Circuit interpreted the new Rule 4(m) as still mandating dismissal of a complaint absent a showing of "good cause" warranting an extension of time for service.  See <u>Mendez v. Elliot</u>, 45 F.3d 75, 78 (4th Cir. 1995).  The <u>Mendez</u> Court, however, made no mention of the Advisory Committee Notes to the 1993 amendments, which explicitly state that the new Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown*."  (Emphasis added).

34

Subsequent to the Fourth Circuit's decision in <u>Mendez</u>, the Supreme Court noted in dicta that the 1993 amendment to Rule 4(m) accorded district courts "discretion to enlarge the 120-day period for service, even if there is no good cause shown."  <u>Henderson v. United States</u>, 517 U.S. 654, 662 (1996).  Several courts have called into doubt the continuing validity of <u>Mendez</u> in light of the 1993 Advisory Committee Notes and the <u>Henderson</u> dicta.  <u>See</u> <u>Hoffman v. Baltimore Police Dep't</u>, 379 F. Supp. 2d 778, 786 (D. Md. 2005); <u>United States ex rel. Shaw Env't, Inc. v. Gulf Ins. Co.</u>, 225 F.R.D. 526, 528 (E.D. Va. 2005); <u>Melton v. Tyco Valves & Controls, Inc.</u>, 211 F.R.D. 288, 289 (D. Md. 2002); <u>Johnson v. United Steel Workers</u>, 172 F.R.D. 185, 188 n.6 (W.D. Va. 1997).  Even the Fourth Circuit has stated in an unpublished opinion that it regards the Supreme Court's statement in <u>Henderson</u> "as persuasive as to the meaning of Rule 4(m)."  <u>Scruggs v. Spartanburg Reg'l Med. Ctr.</u>, 198 F.3d 237 (Table), 1999 WL 957698,at *2 (4th Cir. Oct. 19, 1999).  However, the Fourth Circuit declined to overrule <u>Mendez</u>, noting that it was "questionable" whether the Fourth Circuit could overrule such precedent when the Supreme Court's statement in <u>Henderson</u> was merely dicta.  <u>Id.</u> at *2 n.2.

Thus, while the continuing validity of <u>Mendez</u> is in serious doubt, it is clear that <u>Mendez</u> is still binding authority in this Circuit. <u>See</u> <u>Johnson</u>, 172 F.R.D. at 188 n.6. Accordingly, under controlling Fourth Circuit precedent, the Plaintiff is required to establish good cause for extending the period for service beyond the 120 days provided in Rule 4(m).[7]

In order to demonstrate good cause, a plaintiff must show that she "made 'reasonable, diligent' efforts to effect service on the defendant." <u>T&S Rentals v. United States</u>, 164 F.R.D. 422, 425 (N.D. W. Va. 1996). Good cause typically requires a finding that "some extraordinary circumstance must have impeded service, for example: the defendant was evading service; the plaintiff experienced difficulty in obtaining defendant's proper address; the plaintiff was misdirected by court personnel as to proper procedure; or a defect in the attempted service was not revealed by the defendant until after the time expired." <u>Hoffman</u>, 379 F. Supp. 2d at 786 (citations omitted). Mere "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service" are

---

[7]The Federal Rules of Civil Procedure were most recently amended on December 1, 2007. These amendments, however, do not change the Court's analysis of Rule 4(m) and the precedential effect of <u>Mendez</u>, as the amendments appear to merely reword Rule 4(m) without creating any substantive change to its effect or meaning.

generally insufficient to establish good cause. <u>Vincent v. Reynolds Mem'l</u> <u>Hosp., Inc.</u>, 141 F.R.D. 436, 437 (N.D. W. Va. 1992).

Upon careful consideration, the Court concludes that the Plaintiff has not shown good cause for extending the time for service in this case. The Plaintiff has not been diligent in her attempts to serve the Defendants in this case. The Plaintiff filed her Complaint in state court on August 21, 2006, but made no attempts at service until over two months later. Several defendants filed motions challenging the sufficiency of service of process in the state court proceeding, thus notifying the Plaintiff of the alleged defects in service. Despite this notice, the Plaintiff made no attempt to re-serve these Defendants and no attempt was made to serve the other Defendants in the state court action.

Once this case was removed, the Plaintiff was provided a "second bite at the apple," that is, an additional 120 days to perfect service and to cure the defects in the state service. Despite this opportunity, however, Plaintiff made no attempt to serve any of the Defendants for 110 days after removal. When Plaintiff finally procured the federal summonses, she had only 10 days left to effect service on the Defendants. Plaintiff has not offered any justification for the delay in initiating service. "Last minute

attempts at service, absent some explanatory justification, do not establish good cause." <u>McIsaac v. Ford</u>, 193 F. Supp. 2d 382, 383 (D. Mass. 2002); <u>see also</u> <u>Reliable Tax & Financial Services, Inc. v. H&R Block Eastern Tax Services, Inc.</u>, 212 F. Supp. 2d 592, 595 (E.D. Va. 2002) (finding no good cause where plaintiffs waited 115 days to initiate service).

Despite having notice that the state service was deficient, and that her case was at risk of being dismissed for insufficient service of process, Plaintiff delayed any attempts at service until mere days before the expiration of the time for service. Plaintiff has not shown any good cause for this delay and has presented the Court with no reason why she should be afforded yet another opportunity to effect service beyond the additional 120 days already afforded to her under Rule 4(m).

While the Plaintiff has requested additional time "to cure any unforeseen or potential defects in service of process," the Plaintiff does not state how much time would be necessary to do so. Her motion does not contain a prayer for relief and does not request any specific extension of time for service. While the period of service may be extended "for an appropriate period," Fed. R. Civ. P. 4(m), the Plaintiff's motion gives the

Court no indication as to what extension of time the Plaintiff would consider to be appropriate under the circumstances.

The Court is mindful that the applicable statutes of limitation have now run and that if this case were dismissed without prejudice as required by Rule 4(m), the Plaintiff would be unable to refile her Complaint.  See Mendez, 45 F.3d at 78 (noting Rule 4 "does not . . . give the [plaintiff] a right to refile without the consequence of time defenses, such as the statute of limitations."  The Advisory Committee Notes to the 1993 Amendments to Rule 4 state that relief from the 120-day period for service "may be justified, for example, if the applicable statute of limitation would bar the refiled action . . . ."  However, several courts have held that consideration of a statute of limitations bar is just one factor to consider when determining whether to relieve a plaintiff of the operation of Rule 4(m).  See Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir. 1996); Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305-06 (3d Cir. 1995); In re Hall, 222 B.R. at 280; In re Barr, 217 B.R. 626, 630 (W.D. Wash. 1998).  Thus, the fact that the Plaintiff's action may now be time barred, standing alone, does not require extending the time period for service in this case.

Even if this Court had the discretion to extend the time for service in the absence of good cause, the Court would decline to do so in this case. Plaintiff has had ample opportunities to serve the Defendants correctly and has not done so. Plaintiff had several months while the matter was pending in state court to serve the Defendants under state law. Upon removal, Plaintiff was granted another 120 days to cure the defects in the state service, but she did nothing for 110 days. Plaintiff did attempt service on the Defendants within those remaining 10 days, but as the Court has determined, that service was defective. In filing a motion for extension of time to attempt service, Plaintiff is essentially seeking a "third bite at the apple." The only stated reason for seeking the extension was so that in the event the Court found that Plaintiff's second attempt at service was not sufficient, she could try yet again to effect service. The Court declines, in its discretion, to grant this "third bite" to the Plaintiff. Accordingly, Plaintiff's Motion to Extend Time to Serve Summons [Doc. 50] is denied.

For the reasons set forth above, the Court concludes that the Plaintiff has failed to serve the Sears Defendants, the Gaston County Defendants, American Service Group d/b/a Prison Health Services, and IPC International in accordance with the law within 120 days of the removal of

this action, and Plaintiff has not stated good cause for extending the time for service.  Accordingly, these Defendants shall be dismissed without prejudice from this action.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the motions filed as Documents 25, 52, 76, and 79 are all duplicative filings and are therefore **DENIED AS MOOT**.

As the Defendant Westfield/Eastridge Mall has been dismissed from this action, **IT IS FURTHER ORDERED** that the Motion to Adopt by Defendant Westfield/Eastridge Mall [Doc. 112] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Watson Insurance Agency [Doc. 16] is **GRANTED**.  The Defendant Watson Insurance Agency is **DISMISSED WITHOUT PREJUDICE** from this action for Plaintiff's failure to prosecute her claim against said Defendant. Accordingly, Watson Insurance Agency's Motion for Protective Order [Doc. 102] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Amend and Supplement Reply Brief [Doc. 40] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Extend Time to Serve Summons [Doc. 50] is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Adopt and Join in Motion for Protective Order by IPC International Corporation [Doc. 106] and the Motion to Adopt and Join in Motion for Protective Order by Steven Brown, Frankie Bell, and Sears, Roebuck & Co. [Doc. 107] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Motions for Protective Order filed by the Gaston County Defendants [Doc. 98], Gaston County Emergency Management System [Doc. 100], and the Defendant Improperly Named "American Service Group d/b/a Prison Health Services" [Doc. 104] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Extension of Time to Respond [Doc. 109] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Second Motion to Dismiss for Lack of Jurisdiction by IPC International [Doc. 78]; the Motion to Dismiss Based on Plaintiff's Failure to Serve Defendants in a Timely Manner filed by Steven Brown, Frankie Bell, and Sears, Roebuck & Co. [Doc. 88]; the Motion to Dismiss of Defendant Improperly Named American Service Group d/b/a Prison Health Services, Inc. Based on Plaintiff's Failure to

Timely Serve This Defendant [Doc. 90]; and the Motion to Dismiss filed by Alan Cloninger, John Doe 1, John Doe 2, John Doe 3, John Doe 4, Gaston County, Gaston Emergency Management Services, and Jan Winters [Doc. 118] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Gaston County, Sheriff Alan Cloninger, John Does 1-4, Gaston County Emergency Management Systems, and County Manager Jan Winters  [Doc. 14]; the Motion to Dismiss for Lack of Jurisdiction of IPC International [Doc. 21]; the Motion to Dismiss By Special Appearance of American Service Group, d/b/a Prison Health Services [Doc. 46]; and the Motion to Dismiss for Failure to State a Claim filed by Steven Brown, Frankie Bell, and Sears, Roebuck & Co. [Doc. 83] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the following Defendants are hereby **DISMISSED WITHOUT PREJUDICE** for lack of proper service of process, and judgment shall issue simultaneously herewith: (1) Steven Brown; (2) Frankie Bell; (3) Sears Roebuck & Company; (4) D. Whitlock, individually and in his official capacity as a City of Gastonia Police Officer; (5) Gaston County; (6) Alan Cloninger, individually and in his official capacity as the Sheriff of Gaston County; (7) Gaston County Emergency System; (8) Jan

Winters, individually and in his official capacity as the County Manager for Gaston County; (9) John Doe 1, individually and in his official capacity as an employee of the Gaston County Emergency Management Services; (10) John Doe 2, individually and in his official capacity as an employee of the Gaston County Emergency Management Services; (11) John Doe 3, individually and in his official capacity as a Deputy Sheriff of the Gaston County Sheriff Department; (12) John Doe 4, individually and in his official capacity as a Deputy Sheriff for the Gaston County Sheriff Department; (13) American Service Group d/b/a Prison Health Services; and (14) IPC International.

As a result of the dismissal of the above-referenced Defendants, **IT IS FURTHER ORDERED** that the Motion to Quash Summons filed by Gaston County Emergency Management Systems and John Doe Defendants [Doc. 63]; the Motion to Quash Summons filed by Gaston County, Jan Winters, and Alan Cloninger [Doc. 65]; and IPC's Motion for Extension of Time to Respond to Complaint [Doc. 75] are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Signed: January 23, 2008

Martin Reidinger
United States District Judge